# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MIGUEL ANGEL LOPEZ, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>      Defendant. ) | No. 08 CV 832<br>Judge Blanche M. Manning |

## MEMORANDUM AND ORDER

Plaintiff Miguel Angel Lopez injured himself while lifting heavy objects at work in October 2003. He applied for disability benefits, but was denied at every turn within the Social Security Administration. He appealed to this court and filed a motion for summary judgment asking that the court reverse the Commissioner's final decision denying him benefits. For the reasons stated, the motion for summary judgment is granted.

## BACKGROUND

The following facts appear to be undisputed. Miguel Lopez worked as a laborer for a construction company. On October 7, 2003, he moved a large skid that was leaning against a wall. While twisting to move the skid, he heard a "bone pop" and experienced pain in his lower back and down his right leg. Although he had trouble walking following this incident, he continued working because a supervisor told him to. After work he took Advil for the pain, but could not sleep and had difficulty getting out of bed the next morning. Lopez did not report for work that day and, instead, went to Victory Memorial Hospital. There, he was treated by a doctor whom the defendant identifies as Dr. Vyas, but who is identified in the hospital records as Dr. Valentia Polyak. Dr. Polyak ordered an x-ray, which showed "[m]ild spurring of the lumbar vertebral bodies consistent with mild degenerative changes." (Administrative Record at 149.)

She also referred Lopez for physical therapy and for an evaluation by a pain management physician, Dr. Anatoly Arber. On October 27, 2003, Dr. Arber reported that the patient had "limited range of motion due to severe pain in the lumbar area," "spasm in the right paraspinal muscles," and "symptoms of right lumbar radiculopathy due to disc herniation." (A.R. 204.) Dr. Arber recommended that Lopez obtain an MRI and, in the meantime, offered to give him a "paravertebral block to relieve the spasm and ease the pain," but reported that Lopez refused the paravertebral block. (*Id.*)

On November 3, 2003, Lopez obtained an MRI from Dr. Gregory Shenk. According to Dr. Shenk, the MRI showed (1) "[d]egenerated left lateral L3-L4 herniated nucleus pulposus into the left L3-L4 intervertebral foramen compressing the emergency left L3 nerve root," (2) "[d]egenerated left central intra-annular L5-S1 HNP," and (3) "[d]egenerated centrally bulging L4-L5 disc." (A.R. 219.) The following day, Dr. Arber reported that "Lopez has a bulging disc at the level L4-L5 L5-S1, which is most probably responsible for the current symptoms of right radiculopathy." Dr. Arber again offered treatment for Lopez's pain (a transforaminal epidural steroid injection) but, according to Dr. Arber, Lopez again refused.

Throughout October and November, Lopez participated in the physical therapy that Dr. Polyak had recommended. Lopez initially reported to his physical therapist that his pain ranged from 8 to 10 out of 10 (A.R. 151), but over the course of his therapy his pain dropped to a range of 4 to 5 out of 10, (A.R. 189). His therapist also noted that his lumbar range was initially 0% extension and 10% flexion in October (A.R. 152), but over the course of treatment increased to 10% extension and 30% flexion. (A.R. 189).

On December 1, 2003, Lopez was examined by Dr. Jay Levin as part of a worker's compensation claim that Lopez had filed. Dr. Levin also reviewed Lopez's MRI. He found damage only on Lopez's left side (a herniated nucleus pulposus at L3-L4 on the left, displacing the left L3 nerve root), inconsistent with Lopez's reports of pain on only his right side. Dr. Levin recommended additional physical therapy. If physical therapy did not significantly improve Lopez's remaining complaints of pain, Dr. Levin recommended a lumbar myelogram with post myelographic CT scan to "verify that we are not missing something on the right side contributing to his significant clinical complaints." (A.R. 224.)

In February 2004, Lopez visited orthopedic surgeon Dr. Jesse Butler. Dr. Butler diagnosed Lopez with mild degenerative joint disease in his lower back, with left-sided MRI pathology but right-sided symptoms. (A.R. 274.) Dr. Butler reported that two epidural steroid injections had completely relieved Lopez's leg pain. In March 2004, a physical therapist determined that Lopez's leg strength and lumbar range of motion had improved since his accident. (A.R. 152, 189, 232, 242.)

In April 2004, Lopez underwent a functional capacity evaluation. The evaluation was performed by physical therapist Kimberly Fellows, who concluded that Lopez was "currently capable of working at the Light physical demand level" within certain parameters, meaning that Lopez could exert up to 20 pounds of force occasionally, and up to 10 pounds frequently, but only a negligible amount constantly. (A.R. 262.) However, Fellows noted that Lopez displayed multiple signs of symptom magnification during her examination of him, which led Fellows to suspect that Lopez could perform at a greater physical demand level than he displayed. (*Id.*)

Upon reviewing the results of the functional capacity evaluation and meeting again with

Lopez, Dr. Butler noted that he did not believe that surgery would help Lopez because he had left-sided pathology, but the pathology was relatively mild and Lopez's pain was on his right side. Dr. Butler further noted that he found no abnormalities on Lopez's high-quality MRI images that could explain Lopez's right-sided pain, and that Lopez's left-sided pathology should have resolved by that point. (A.R. 279, 280.)

In May 2004, Dr. Levin conducted his second examination of Lopez. Dr. Levin had x-rays taken of Lopez, which revealed degenerative changes at L3-L4 and L4-L5 with a mild left lumbar scoliosis. (A.R. 226.) Again, Dr. Levin noted that Lopez's complaints of pain were inconsistent with his left-sided pathology. Dr. Levin also noted that, based upon his review of Lopez's functional capacity evaluation, Lopez had not "demonstrate[d] his maximum capacities," and opined that Lopez could actually perform at a heavy work level, exerting 50 to 100 pounds of force occasionally, 25 to 50 pounds frequently, and 10 to 20 pounds constantly. (A.R. 227.) Dr. Levin also believed that Lopez was at "maximum medical improvement." (*Id.*)

In June 2004, Dr. Samuel Chmell examined Lopez and reviewed his MRI scan. Dr. Chmell found that Lopez had a traumatic aggravation of degenerative joint disease of the lower spine, L3-L4 disc herniation with radiculopathy, and L5-S1 disc herniation. (A.R. 284.) As a result, Dr. Chmell determined that Lopez could return to work only at the light work level. (*Id.*)

In January 2005, Lopez was required to visit Dr. Elmes for an orthopedic consultative examination as part of his application for disability benefits. Lopez complained about weakness with distance walking and difficulty balancing, and told Dr. Elmes that lifting more than 15 pounds aggravated his back. Dr. Elmes noted that during his examination of Lopez, Lopez displayed 5 out of a possible 6 signs of symptom magnification.

In March 2005, state agency physician Dr. Free reviewed Lopez's files and concluded that Lopez could occasionally lift 50 pounds, frequently lift 25 pounds, and stand/walk or sit for 6 out of 8 hours each day. Dr. Free's assessment was affirmed by Dr. Francis, another state agency physician, during his review of the record in June 2005.

Two years later, in March 2007, as part of his application for disability benefits Lopez underwent a consultative examination by Dr. Kale, who also reviewed the records of Dr. Elms and Dr. Chmell. Lopez complained to Dr. Kale about back, leg, and shoulder pain that interfered with his ability to lift, carry, or push more than 10 pounds. Dr. Kale concluded that Lopez could occasionally lift 10 pounds, frequently carry 10 pounds, and occasionally carry 20 pounds, which he based upon Lopez's "stated capacity." (A.R. 305.) Dr. Kale noted, however, that he found "inconsistency in [Lopez's] examination with no evidence of atrophy, fasciculations or tremor, and apparently alternation from Dr. Chmell's report, which he was limping on his left, and now limping on the right lower extremity." (*Id.*)

After the state agency denied his application for disability benefits initially and on reconsideration, Lopez requested and received a hearing before administrative law judge Maren Dougherty on September 5, 2007. Based upon the hearing and her review of the record, ALJ Dougherty determined that Lopez had a severe impairment, but not one that singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Dougherty concluded that Lopez could perform light work except that he could lift up to 15 pounds frequently, and therefore could perform his past relevant work. Accordingly, she found Lopez to be not disabled. The Appeals Council denied Lopez's request for review and so the ALJ's decision became the Commissioner's final decision. Lopez appealed

to this court, arguing that ALJ Dougherty's decision is not supported by substantial evidence. He asks the court to reverse the ALJ's decision and either award him benefits or, in the alternative, remand for further proceedings before the ALJ.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court must review all of the evidence in the record. *See Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1985). Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g), which provides that "the findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Thus, the court will not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993).

Instead, the court must determine whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *see also Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's decision must be affirmed if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may support the claimant's argument. 42 U.S.C. § 405(g). A credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's conclusions of law, however, are not entitled to such deference. If the ALJ committed an error of law,

"reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani v. Heckler*, 797 F.2d 508, 510 (7th Cir. 1986).

Under the Social Security Act, an individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 32 U.S.C. § 1382c(a)(3)(A). Additionally, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920. The ALJ must determine in sequence: (1) whether the claimant is presently working and whether that work constitutes substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the list of specified impairments, *see* C.F.R. Part 404, Subpart 4, Appendix 1; (4) the claimant's residual functional capacity and whether, in light of that capacity, the claimant is able to perform his past relevant work; and (5) whether the claimant's age, education, and past work experience, in relation to his residual functional capacity, enable him to do other work. *Id.* Once the ALJ has reached step five, the Commissioner has the burden of proving that there are jobs in the national economy that the claimant can perform. 20 C.F.R. § 1520(a)-(f).

The ALJ determined that Lopez was not presently employed (step 1) and suffered a severe impairment (step 2). As noted above, ALJ Dougherty found at step 3 that, even though Lopez had a severe impairment, the impairment did not meet or equal one of the impairments specific in C.F.R., Part 404, Subpart 4, Appendix 1. Because she also concluded at step 4 that he could lift up to 15 pounds frequently and therefore could perform his past relevant work, she determined that he was not disabled.

## ANALYSIS

Lopez contends that his appeal of the ALJ's decision raises a single issue: "whether the final decision of the Secretary is supported by substantial evidence." (Summary Judgment Motion at 1.) Specifically, he argues that the ALJ's decision that he could perform past relevant work, and therefore was not disabled, is not supported by substantial evidence because the ALJ ignored relevant evidence of his disability. Although Lopez contends that he has raised the single issue of lack of substantial evidence, he proceeds to identify two other alleged errors by the ALJ. The second alleged error is that the ALJ failed to account for the fact that he is an older, unskilled worker who does not speak English and therefore, under Vocational Rule 201.17, should have been found to be disabled. The third alleged error is that the ALJ failed to elicit testimony from a vocational expert during his hearing as to "what jobs may exist in the national economy claimant could perform." (Summary Judgment Motion at 2.) The court will address each alleged error in turn.

### A. Substantial Evidence

Lopez argues that the ALJ's assessment of his residual functional capacity at step four is not supported by substantial evidence, and therefore the decision that he is not disabled because

he can perform his past relevant work is flawed. As discussed above, under the substantial evidence standard of review the ALJ's decision must be affirmed if the findings and inferences reasonably drawn from the record are supported by substantial evidence.

The ALJ stated that her determination that Lopez's residual functional capacity—that he could perform light work except that he could frequently lift 15 pounds—was consistent with the "general consensus among treating and examining physicians . . . that the claimant has the capacity to perform light work." (A.R. 15.) However under the relevant regulations, the capacity to perform light work includes the capacity to lift no more than 10 pounds frequently. *See* 20 C.F.R. § 404.1567(b). Accordingly, her conclusion that he could lift 15 pounds frequently is not consistent, but rather is at odds, with the consensus that Lopez could perform no more than light work.

The ALJ's error is significant because she determined that, because he could lift 15 pounds frequently, he could perform past relevant work and therefore was not disabled. However, she also found that Lopez's past relevant work required him to lift 10 to 15 pounds. If the general consensus was that Lopez could perform only light work and therefore lift no more than 10 pounds, then he could not perform a job that required him to lift 15 pounds.

The court cannot tell from the ALJ's decision if she mistakenly believed that a claimant limited to performing light work could nevertheless be required to frequently lift 15 pounds. Perhaps what she meant was that she was rejecting the opinions of Dr. Chmell and physical therapist Fellows, who believed that Lopez could lift no more than 10 pounds. Indeed, Drs. Levin, Free and Francis opined that Lopez could frequently lift 25 pounds, and even Fellows thought that Lopez could lift more than he let on because he exhibited signs of symptom

magnification.  But the court cannot know whether either of these possibilities led to the ALJ's decision because she never acknowledged the seeming inconsistency in her decision.  An ALJ must minimally articulate reasons for her decision, including crediting or rejecting pertinent evidence.  *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  Failure to do so is error and serves as a basis for a remand.  *Id.*

Because the ALJ erred by failing to articulate reasons for her decision or to offer any explanation for the seeming inconsistency in her decision that Lopez was limited to light work but could perform a job that required frequently lifting 15 pounds, Lopez is entitled to summary judgment.  The case is remanded for further proceedings consistent with this order.

### B.  Remaining Arguments

Although the court has already determined that Lopez is entitled to a remand, for the sake of completeness and to the extent it assists the parties on remand, the court addresses Lopez's other arguments about alleged errors by the ALJ.

#### 1. ALJ Allegedly Failed to Credit Dr. Kale's Opinion About Lopez's Capacity to Lift

Lopez argues that the ALJ erred when she ignored Dr. Kale's opinion in March 2007 that Lopez could lift no more than 10 pounds occasionally.  He offers two arguments in support.  First, he contends that the ALJ was required to give Dr. Kale's opinion greater weight because it was "the most recent evaluation."  (R.18 at 3.)  However, Lopez has cited no authority to support his argument that the ALJ must credit only the most recent medical evaluation.  Nor can any support for such an argument be found in the regulations, which contain an extensive list of

factors that influence the weight given to medical opinions. *See* 20 C.F.R. § 404.1527(d). Recency is not among those factors. *Id.*

Second, Lopez argues that the ALJ's reason for giving Dr. Kale's opinion little weight—the fact that Dr. Kale had simply adopted Lopez's stated capacity for lifting—was improper. According to Lopez, the ALJ was required to credit Lopez's stated capacity for lifting because Lopez identified a medical impairment that could reasonably explain his impaired ability to lift. But the authority that Lopez cites to support that argument is inapposite. It addresses subjective complaints of *pain*, not stated capacities to lift. *See* 20 C.F.R. § 404.1529(a) (an ALJ must take into account a claimant's subjective reports of pain if there is also evidence of a "medical impairment(s) which could reasonably be expected to produce the pain").

### 2. ALJ Allegedly Ignored Evidence of MRI

Next, Lopez also argues that the ALJ ignored evidence of his MRI. However, Lopez does not elaborate and, therefore, has not identified what information in the MRI the ALJ failed to take into account. In any event, the ALJ repeatedly referred to the MRI in her decision. For instance, she noted that after examining Lopez and reviewing his MRI, Dr. Butler found "no structural abnormalities on the high quality MRI [that] could explain the pain complaints" reported by Lopez. (A.R. 17.)

### 3. ALJ Allegedly Ignored Vocational Rule 201.17

Next, Lopez argues that the ALJ erred by failing to find him disabled under Vocational Rule 201.17. Rule 201.17 is part of the Social Security regulations known as the Grid, a chart that classifies a claimant as disabled or not disabled based on criteria such as age, education, capacity, and experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Under Rule 201.17, a

claimant is disabled if he is 45-49, illiterate or unable to communicate in English, and he has either no previous work experience or his experience was unskilled. Lopez contends that he meets each of those criteria and therefore the ALJ should have found him disabled.

However, the Grid is relevant only at step 5 of the sequential analysis. *See Ortiz v. Chater*, 986 F. Supp. 479, 486 (N.D. Ill. 1997) ("The ALJ's analysis at step 5 typically involves . . . an application of the Medical-Vocational Guidelines ('the Grid')"). The ALJ found that Lopez was not disabled at step 4 because his residual functional capacity permitted him to perform past relevant work. Accordingly, the ALJ never reached step 5. Therefore based on the current record, the ALJ's failure to apply the Grid is not an independent basis for remand.

### 4. ALJ Allegedly Failed to Take Testimony of Vocational Expert

Finally, Lopez argues that the ALJ also erred by failing to ask any questions of the vocational expert who attended Lopez's hearing. As Lopez puts it:

> Plaintiff was incapable of performing Past Work. The burden then shifted to the Defendant to show that Plaintiff could work elsewhere in the economy.
>
> The Defendant did not elicit any testimony from a Vocational Expert on that issue notwithstanding the fact that a VE was present at the hearing.

(R.18 at 3.) However, as discussed above, the ALJ found that Lopez was not disabled at step 4. As a result, the sequential analysis never reached step 5, and therefore this is also not an independent basis for remand based on the current record.

### CONCLUSION

The ALJ failed to articulate her basis for determining that Lopez has the functional residual capacity to lift 15 pounds frequently. The error is significant because Lopez's perceived ability to lift 15 pounds was critical to the ALJ's determination that Lopez could perform past

relevant work and therefore was not disabled. Accordingly, Lopez is entitled to summary judgment, and the case is remanded for further proceedings consistent with this order. The clerk is directed to enter a Rule 58 judgment in Lopez's favor and to terminate this case from the court's docket.

ENTER:

DATE: January 30, 2008        *Blanche M. Manning*
Blanche M. Manning
United States District Judge